MERRITT, Circuit Judge,
dissenting.
This should be an easy case. The defendant-appellant, Worldwide Equipment Inc., is a heavy truck dealer that supplies coal hauler dump trucks to coal mining companies in the Appalachian region. The companies use the trucks to haul coal from mine face to tipple, a process which almost always involves travel over the Interstate and other roads. For this reason, the government claims that Worldwide must pay a 12% excise tax on the sale of its trucks under 26 U.S.C. § 4051. The tax applies to “heavy trucks” (trucks over 33,-000 pounds) because of the special damage that they cause to public roadways.
Whether Worldwide is subject to the excise tax turns on whether its trucks fall under an exception to the tax for off-highway vehicles. To qualify, a vehicle must be (1) “specially designed for the primary function of transporting a particular type of load other than over the public highway,” and (2) “by reason of such special design, the use of such vehicle to transport such load over the public highways [must be] substantially impaired.” 26 C.F.R. § 4061(d)(2)(h) (emphasis added).
Worldwide persuaded the majority that it fell under the exception by slight of hand. During oral argument, its attorney limited the Court’s focus to whether the trucks at issue were specially designed for the primary function of hauling coal off-highway and, as result, caused the Court to ignore the second factor, which considers whether (by reason of such design) they were substantially impaired from traveling over public roads. Although there is a strong argument that the trucks were not specially designed for the primary function of off-road use, this question is a little closer than whether the trucks were impaired from traveling over public roads. That the trucks were not substantially impaired from using public roads was clearly established by facts in the record which detailed routine use of the Interstate by Worldwide trucks transporting coal from face to tipple. An expert civil engineer testified that most coal mines in the Appalachian region are too small to justify an on-site tipple such that a central tipple often serves multiple small mine faces in a region, and that travel to the tipple in this scenario necessitates highway use. This theory was supported by data collected by the IRS and Kentucky Vehicle Enforcement officer in 1999 and 2006 documenting routine highway use by coal trucks (including Worldwide’s model) in transporting coal from face to tipple. In view of such facts, it is impossible to conclude that the truck at issue is substantially impaired from travel over public highways. Therefore, on this fact alone, the Court cannot conclude that the truck falls under the exception. Under this statute, the law does not require general taxpayers to subsidize all the costs of large, commercial trucks hauling heavy loads that tear up the country’s roads between the coal mine and points of further distribution.
Beyond the question of substantial impairment, there is also strong support for *333 the proposition that the trucks were not primarily designed for off-highway use, but instead for the more general road use of getting coal from face to tipple which contemplates the dual function of driving off-road in and around the mine face and traveling on public roadways to get the coal to tipple. A coal truck incapable of traveling on public roads would, in most cases, be unable to get coal from face to tipple and would therefore serve no purpose.